UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Demarco Wright,                                  Case No. 3:24-cv-226

         Plaintiff,

     v.                                          MEMORANDUM OPINION
                                                     AND ORDER

Annette Chambers-Smith, *et al.*,

         Defendants.

## I.     INTRODUCTION

Demarco Wright, an inmate at the Toledo Correctional Institution in Toledo, Ohio, ("ToCI") who is proceeding *pro se*, filed suit alleging violations of his[1] constitutional rights against Defendants Director of the Ohio Department of Rehabilitation and Correction ("ODRC") Annette Chambers-Smith, former ToCI Warden Kimberly Henderson, ODRC Prison Rape Elimination Act ("PREA") Investigator Thomas Clark, Corrections Officer Vance, and five John Does. (Doc. No. 1). Interested Party the State of Ohio filed a motion to dismiss Wright's complaint on behalf of all Defendants. (Doc. No. 10). Wright filed a response in opposition, (Doc. No. 12), and Defendants filed a brief in reply. (Doc. No. 13). For the reasons stated below, I deny the motion in part and grant it in part.

---

[1] Wright identifies as transgender and uses the pronouns "he/him." (*See* Doc. No. 1 at 6-7). I will use the same pronouns in this opinion.

## II. BACKGROUND

Wright alleges Defendants violated his constitutional right to be free from cruel and unusual punishments on two occasions. The first instance allegedly occurred on January 29, 2022. Wright alleges he was housed in a protective control unit at ToCI because he identifies as transgender and has been subjected to threats and harassment from other inmates. (Doc. No. 1 at 4, 6). Wright contends that he was assaulted by another inmate, Desmond Criswell, at approximately 9:10 p.m. on January 29, 2022. Wright alleges Criswell approached his cell door while Criswell's cellmate asked Corrections Officer Vance to open Wright's cell door so Criswell could give Wright his laundry. (*Id.* at 8). According to Wright, Vance remotely unlocked Wright's cell door even though Criswell was not carrying a laundry bag. (*Id.*). Criswell then entered Wright's cell and began physically assaulting him. (*Id.*). Wright fought back before officers eventually arrived to break up the altercation. (*Id.* at 8-9). Both inmates received conduct reports and institutional discipline as a result of the incident. (*Id.* at 9).

The second instance occurred around 6:10 p.m. on November 20, 2022.[2] Wright alleges an inmate named Terrence Ashford followed him into his cell after Wright had taken a shower, where Ashford physically and sexually assaulted him. (*Id.* at 4-5). Wright fought off Ashford and forced Ashford to leave his cell. (*Id.* at 5). Later that evening, Wright attempted to get Vance's attention to report the assault, "but Vance pretended not to hear him." (*Id.*). Wright reported the incident to a lieutenant the following morning and was taken to the hospital, where he received treatment for injuries he suffered during the physical and sexual assault. (*Id.*).

Upon his return to ToCI, Wright alleges he was placed in disciplinary segregation and issued a conduct report for fighting. (*Id.*). He asserts he was not given a mattress or blanket until the

---

[2] Wright alleges he was physically and sexually assaulted "countless" other times by inmates and staff members but that he only "has enough evidence" regarding the January 29 and November 20, 2022 incidents. (Doc. No. 1 at 8).

2

following day, and that he never received his personal property. (*Id.*). While he was found not guilty of fighting, Wright asserts none of the Defendants addressed his complaints about the sexual assault. Wright alleges he made a PREA report to Clark on November 21, 2022, who spoke with him for approximately one minute before telling Wright the incident was under investigation. (*Id.* at 7).

Wright alleges he complained to Vance and other corrections officers in his unit about prior instances in which Ashford made sexual comments and advances, as well as threats of rape, but that no action was taken. (*Id.* at 6). Wright also asserts that, after the assault, Vance told other inmates that Wright was the reason that officers would be more strictly enforcing certain rules restricting contact between inmates and that Wright suffered increased harassment from other inmates. (*Id.*). According to Wright, each of the grievances he filed about this incident were denied. (*Id.* at 7-8).

Wright asserts Defendants violated his right to be free from cruel and unusual conditions of confinement under the Eighth and Fourteenth Amendments, and he seeks relief pursuant to 42 U.S.C. § 1983. (*Id.* at 9-10). Defendants move to dismiss Wright's complaint, arguing it is barred by the applicable statute of limitations and fails to state a claim upon which relief may be granted.[3] (*See* Doc. No. 10 at 4-12).

### III. STANDARD

A defendant may seek to dismiss a plaintiff's complaint on the ground the complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Factual allegations must be sufficient to state a

---

[3] While Defendants contend they "are entitled to Summary Judgment" on Wright's deliberate indifference claim, no discovery has been conducted and Defendants' briefing cites only Rule 12(b)(6). (*See* Doc. No. 10 at 9). Therefore, I will not consider their motion as one for summary judgment.

3

plausible claim for relief. *Iqbal*, 556 U.S. at 678. Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV.  ANALYSIS

There are two preliminary matters to address before I discuss the parties' remaining arguments.

First, I note that Wright argues I should deny Defendants' motion in its entirety because the complaint passed through the initial screening procedures found in 28 U.S.C. § 1915(e). (Doc. No. 12 at 5-7). That provision provides that a court may dismiss a *pro se* filing if the court determines that "the action . . . is frivolous or . . . fails to state a claim on which relief may be granted[] or . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). But Wright has not cited any caselaw in support of this argument, and Sixth Circuit precedent does not favor Wright's position. *See, e.g.*, *Dodson v. Mohr*, No. 21-3778, 2022 WL 3954932 (6th Cir. July 28, 2022) (upholding district court's dismissal of plaintiff's claims at three separate stages of litigation – § 1915(e)(2), Rule 12(b)(6), and Federal Rule of Civil Procedure 56); *Clark v. Chapman*, No. 21-1652, 2022 WL 19833097 (6th Cir. Nov. 22, 2022) (affirming district court's dismissal of plaintiff's claims pursuant to § 1915(e)(2) and later, Rule 12(b)(6)).

Wright fails to show I must deny Defendants' motion merely because I did not dismiss his complaint pursuant to § 1915(e)(2).

Second, Defendants argue the Eleventh Amendment bars Wright's claims against all Defendants in their official capacities because "[t]he Eleventh Amendment . . . precludes all suits, whether for injunctive or monetary relief, against the state and its departments," and a claim against state officials sued in their official capacities is deemed to be a claim against the state. (Doc. No. 10

4

at 11) (citing *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 152 n.2 (6th Cir. 1995), and *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

It is well settled that "state officials sued in their official capacities for money damages are not 'person[s]' subject to suit under § 1983," and therefore the Eleventh Amendment bars those claims. *Sherley v. Thompson*, 69 F. Supp. 3d 656, 659 (W.D. Ky. 2014) (quoting *Will,* 491 U.S. at 71, and citing *Kentucky v. Graham,* 473 U.S. 159, 169 (1985) and *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994)) (alteration by *Sherley*). Accordingly, I grant Defendants' motion to dismiss Wright's claims against them in their official capacities for monetary damages.

But "official-capacity actions for prospective relief [such as injunctive relief,] are not treated as actions against the State" and therefore, those claims are not barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Thus, I deny Defendants' motion as to Wright's official-capacity claims to the extent he seeks injunctive relief.

**A.  STATUTE OF LIMITATIONS**

Defendants first argue that Wright's claim for relief regarding the January 29, 2022 incident is barred by the statute of limitations. (Doc. No. 10 at 4-5). Section 1983 claims filed in Ohio courts are subject to a two-year limitations period. *See, e.g.*, *Beaver St. Invest., LLC v. Summit Cnty, Ohio*, 65 F.4th 822, 826 (6th Cir. 2023). When a *pro se* inmate brings a § 1983 claim, courts apply the prison mailbox rule to determine the date on which the inmate's complaint is considered to have been filed.

Under this rule "a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing *Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (per curiam)). The United States Court of Appeals for the Sixth Circuit has "expand[ed]" this rule "with an assumption that, absent contrary

evidence, a prisoner [handed over the complaint for mailing] on the date he or she signed the complaint." *Brand*, 526 F.3d at 925 (citing cases). Wright signed the complaint on January 26, 2024, within the two-year limitations period. (*See* Doc. No. 1).

Defendants resist this conclusion, arguing Wright's complaint was not filed until May 9, 2024, the date on which his motion for leave to proceed without prepayment of the filing fee was granted. (*Id.*); (*see also* Doc. No. 3). Defendants cite *Truitt v. County of Wayne*, 148 F.3d 644 (6th Cir. 1998), for the proposition that a *pro se* complaint is not considered to be filed until the plaintiff has paid the filing fee or the plaintiff's *in forma pauperis* ("IFP") application had been approved. (Doc. No. 10 at 4-5).

Defendants misread *Truitt*. In that case, the Sixth Circuit confronted the question of "[w]hat happens when the district court <u>denies</u> the IFP application and the plaintiff does not promptly pay the filing fee." *Truitt*, 148 F.3d at 647 (emphasis added). As the *Truitt* court noted, when the district court grants an IFP application, the complaint generally is considered to be filed as of the date the clerk's office received it. *Id.* (quoting *Dean v. Veterans Admin. Reg'l Off.*, 943 F.2d 667, 671 (6th Cir. 1991) (*vacated on other grounds by Dean v. Veterans Admin. Reg'l Off.* 503 U.S. 902 (1992))). As I noted above, in these circumstances, the prison mailbox rule establishes the operative date of filing.

Wright's complaint is not time-barred, and I deny Defendants' motion on this basis.

**B.      LACK OF PERSONAL INVOLVEMENT**

Defendants next argue that Wright fails to state a plausible claim for relief against Defendants Chambers-Smith, Henderson, and Clark because the Complaint lacks any allegations regarding the specific involvement of those Defendants in the events at issue. (Doc. No. 10 at 5-8, 10). Wright contends I should deny Defendants' motion "[b]ecause the supervisory officials in this case . . . have repeatedly been put on specific notice of [unconstitutional and dangerous] conditions

6

and incidents yet have not taken reasonable measures accordingly to abate risks . . . ." (Doc. No. 12 at 5). Wright did not respond to Defendants' specific arguments regarding Clark. (*See id.* at 9-10).

Plaintiffs seeking relief under § 1983 "must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law." *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005) (citing *West v. Atkins,* 487 U.S. 42, 48 (1988)). A defendant may not be held liable under § 1983 under the theory of *respondeat superior*; the plaintiff must allege "'personal involvement'" by the supervisor. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quoting *Miller v. Calhoun Cnty.,* 408 F.3d 803, 817 n.3 (6th Cir. 2005)). Plaintiffs "'must show a supervisory official at least implicitly authorized, approved[,] or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Grinter*, 532 F.3d at 575 (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).

The Complaint contains the following paragraph:

> Further, discovery will evidence that the conditions of confinement in the [Protective Control] Units as [alluded] to herein are such that the type of harm to which Plaintiff has been subjected is sanctioned, encouraged, and even caused by supervisory Defendants who have repeatedly been put on specific notice of said conditions, yet have failed to take reasonable measures to abate said conditions.

(Doc. No. 1 at 10).

The Sixth Circuit has held that a supervisor's "encouragement, authorization, approval, and knowing acquiescence are all sufficient to confer liability" in a § 1983 action. *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (citing *Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002)). But a complaint must contain specific allegations identifying how each individual defendant violated the plaintiff's rights. *See, e.g., Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983.") (citing *Flagg Bros. v. Brooks,* 436 U.S. 149, 155-57 (1978)); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002)

7

(affirming district court's dismissal of plaintiff's claims because plaintiff "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights").

Wright's conclusory allegations that "supervisory Defendants" failed to act in response to prior notice of the allegedly unconstitutional conditions of confinement do not show that either Chambers-Smith or Henderson had any personal involvement in the events underlying the Complaint. *See Peatross*, 818 F.3d at 241 ("[A] mere failure to act will not suffice to establish supervisory liability.") (citations omitted). Therefore, I grant Defendants' motion to dismiss Wright's claims against those two Defendants.

Further, I grant Defendants' motion to dismiss Wright's claim against Clark. Wright alleges only that he made a PREA report to Clark the day after Ashford physically and sexually assaulted and that Clark spoke to Wright for a brief time before telling him the incident was under investigation. (Doc. No. 1 at 7). Wright does not allege Clark had any personal involvement in any event preceding Ashford's attack or identify how Clark may have violated Wright's constitutional rights after the incident. And, as I noted above, Wright did not address Defendants' arguments concerning Clark. I conclude Wright fails to state a plausible claim for relief against Clark and dismiss him from this litigation.

**C.    QUALIFIED IMMUNITY**

Finally, Defendants move to dismiss Wright's remaining Eighth and Fourteenth Amendment claims against Vance, arguing Vance is entitled to qualified immunity. (Doc. No. 10 at 11-12).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). A right is clearly established

8

if "'every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)) (internal quotation marks and alteration omitted by *Mullenix*).

The Sixth Circuit holds a "general preference" that the question of whether the doctrine of qualified immunities bars a plaintiff's claims should answered at the summary judgment stage, rather than in response to a Rule 12 motion. *Guertin v. Michigan*, 912 F.3d 907, 917 (6th Cir. 2019). But this rule is not absolute, because dismissal is appropriate "when the *complaint* establishes the defense." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 762 (6th Cir. 2020) (citing *Peatross*, 818 F.3d at 240) (emphasis in *Siefert*). At the motion to dismiss stage, a court must view the complaint's allegations in the light most favorable to the plaintiff and ask whether the facts alleged show that a state official violated a clearly established constitutional right. *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 563 (6th Cir. 2011) (citations omitted).

Inmates have a clearly established "constitutional right to be free from deliberate indifference to assault and sexual abuse." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011). To state a plausible claim for a violation of this right, a plaintiff must allege facts showing "(1) the alleged mistreatment was objectively serious[,] and (2) the defendant subjectively ignored the risk to the inmate's safety." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

A plaintiff may establish the first part of this showing by alleging facts which demonstrate "'he is incarcerated under conditions posing a substantial risk of serious harm.'" *Bishop*, 636 F.3d at 766 (quoting *Farmer*, 511 U.S. at 834). At the second step, the plaintiff must allege facts showing a prison official acted with deliberate indifference to inmate health or safety. *Bishop*, 636 F.3d at 766 (citation omitted). A prison official acts with deliberate indifference if the official "'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts

from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.'" *Id.* at 766-67 (quoting *Farmer*, 511 U.S. at 837).

I conclude Vance is entitled to qualified immunity on Wright's deliberate indifference claim arising from the November 20, 2022 assault by Ashford. Vance's only alleged action on that day was to "pretend[] not to hear [Wright]" when Wright tried to get Vance's attention to report the assault after it occurred. (Doc. No. 1 at 5). This allegation fails to show Vance was deliberately indifferent to a substantial risk of harm to Wright on November 20, 2022.

But Defendants fail to show Vance is entitled to qualified immunity as to the January 29, 2022 assault by Criswell. On that date, Wright "was a security level 4 [protective control] prisoner" who was housed separately from the general inmate population due to his personal physical safety concerns arising from the harassment and threats he received as a transgender inmate. (*Id.* at 4, 6). Criswell and his cellmate were in the unit dayroom at 9:10 p.m., even though the dayroom was to be locked down for the night at 9:00 p.m. (*Id.* at 8). Criswell's cellmate asked Vance to unlock Wright's cell door "so Criswell could give [Wright] his laundry – although clearly there was no laundry bag in sight." (*Id.*). When Vance unlocked the door, Criswell entered Wright's cell and began to assault him, causing physical injuries. (*Id.* at 8-9). In short, Vance allegedly allowed Criswell to enter Wright's locked cell, even though Criswell had no legitimate reason to do so, knowing that Wright was in protective custody due to concerns for his physical safety.

The Sixth Circuit has addressed a similar factual scenario. In *Bush v. Dickerson*, the plaintiff was sleeping in his segregation cell when several other inmates entered his cell and began to attack him. No. 16-6140, 2017 WL 3122012, at *1 (6th Cir. May 3, 2017). Bush asserted that, just before the inmates entered his cell, "he heard a 'buzz,' a sound he associates with his electronic cell door being opened" by a control officer. *Id.* at *2. The district court granted summary judgment in the officer's favor, but the Sixth Circuit reversed, concluding there was a genuine issue of material fact

10

regarding whether the control officer opened the cell door to allow the inmates inside. *Id.* Therefore, a reasonable jury could conclude the officer acted with deliberate indifference to a substantial risk of serious harm to Bush. *Id.*

At this stage of the litigation, Wright's allegations are sufficient to state a plausible claim that Vance acted with deliberate indifference to Wright's health and safety when Vance allegedly opened Wright's cell door to allow Criswell to enter and then assault Wright. Therefore, I deny Defendants' motion to dismiss as to the January 29, 2022 assault.

## V. CONCLUSION

For the reasons stated above, I grant Defendants' motion to dismiss in part and deny it in part. (Doc. No. 10). I dismiss each of Wright's claims except for his Eighth and Fourteenth Amendment failure to protect claim against Vance regarding the January 29, 2022 assault.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge